**William Earnest REESE, Plaintiff,**

v.

**OWENS–CORNING FIBERGLAS CORPORATION, Defendant.**

No. 96–2048–JWL.

United States District Court,
D. Kansas.

Oct. 7, 1998.

Barry R. Grissom, Overland Park, KS, Jeanne Gorman Rau, McAnany, Van Cleave & Phillips, Kansas City, MO, Anthony F. Rupp, Daniel D. Owen, Shughart, Thomson & Kilroy, Overland Park, KS, Thomas L. Thurston, Dwyer, Dykes & Thurson, Over-

land Park, KS, J. Shane Rockey, Kansas City, KS, for Plaintiff.

Douglas C. McKenna, Leland H. Corley, Kevin F. Warren, Lewis, Rice & Fingersh, L.C., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff William Earnest Reese filed suit against defendant Owens–Corning Fiberglas Corporation alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., arising out of his employment with defendant. Specifically, plaintiff claims that defendant placed him in a work-hardening program on the basis of his race, denied him accrued seniority on the basis of his race, failed to accommodate his disability, and terminated his employment on the basis of his race and disability. Plaintiff further asserts that defendant terminated his employment in retaliation for his filing an EEOC charge and subsequent lawsuit. This matter is presently before the court on defendant's motion for summary judgment (doc. # 72). For the reasons set forth below, defendant's motion is granted in part and denied in part. Specifically, the court denies defendant's motion with respect to plaintiff's claim that he was placed in a work-hardening program on the basis of his race and denies defendant's motion with respect to plaintiff's loss-of-seniority claim. The court grants defendant's motion on plaintiff's remaining claims.

## I. Facts [1]

Plaintiff began his employment with defendant in 1976 as a checker transporter at defendant's warehouse in Kansas City, Kansas. As a checker transporter, plaintiff operated a lift truck with which he loaded and unloaded goods from trucks and rail cars at the warehouse. At all relevant times, plaintiff was a member of a bargaining unit covered by a series of collective bargaining agreements between defendant and the United Brotherhood of Teamsters, Local 541, AFL–CIO.

The first fifteen years of plaintiff's employment are not relevant to the issues before the court. In November 1991, plaintiff sustained a non-work-related injury. As a result of this injury, plaintiff was placed on sick leave for over three years. On February 22, 1995, plaintiff returned to work with no restrictions. Upon his return to work, defendant informed plaintiff that he would not be allowed to accrue departmental seniority for the period of his sick leave.[2] Plaintiff filed a grievance with respect to this decision. Plaintiff's grievance was granted at the third-step grievance meeting.[3] As a result, plaintiff accrued departmental seniority for the entire period of his sick leave.

In October 1995, plaintiff filed a charge of discrimination with the EEOC alleging that defendant discriminated against him on the basis of his race by placing him in a work-hardening program before allowing him to return to work in February 1995. Plaintiff's charge reads as follows:

> After requesting to return to work while I was on sick leave, I was placed in a work hardening program at a rehabilitation center in North Kansas City in early December 1994. I believe I should have already been back on the job by this time. While I was in the work hardening program I was required to lift 70 lbs. before Respondent would return me to my job. I am aware of

---

1. In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff.

2. Defendant recognizes two types of seniority—plant seniority and departmental seniority. Plant seniority is the employee's length of continuous service with the company and affects an employee's pension, vacation and service award benefits. Departmental seniority is the employee's length of continuous service in his or her department and affects an employee's choice of

vacation times, bidding on jobs and shifts available at the warehouse, and the order of lay-offs.

3. The collective bargaining agreement provides for a three-step grievance procedure. At the first step, the employee meets with his or her supervisor and the union steward. At the second step, the employee files a written grievance. The third step involves a meeting with the employee, the Union's business agent and the company's industrial relations specialist. An arbitration procedure follows the third-step grievance meeting.

other employees who were on either sick leave or work hardening who were not required to lift 70 lbs. to return to work.

I believe I was treated this way due to my race, Black, in violation of the Civil Rights Act of 1964, as amended.

Plaintiff also attached an affidavit to his charge. The affidavit primarily sets forth additional details with respect to the alleged lifting requirement. The last paragraph of the affidavit, however, reads as follows:

I was returned to the job with full seniority. On 3/23/95 Mike Bonin changed my seniority date to 1/17/80. I grieved this and it went to the third step. As a result of my grievance I was returned to full seniority as of May 9, 1995.[4]

There are no other allegations with respect to his loss of seniority in the affidavit.

A "Notice of Charge of Discrimination," along with a copy of plaintiff's charge of discrimination, was sent to Doug Healy in defendant's Human Resources Department. According to the notice, "no action" was required by defendant with respect to the notice. The EEOC issued plaintiff a right-to-sue letter a few weeks later. On January 24, 1996, plaintiff filed a *pro se* complaint in federal court alleging race discrimination.

On January 26, 1996, plaintiff telephoned defendant to request that he be placed on non-occupational sick leave due to an injury he sustained while shoveling snow. Plaintiff indicated that he would be available for work on February 3, 1996. Defendant granted plaintiff's request, subject to verification from plaintiff's treating physician. Mary Roland, defendant's occupational health nurse, sent plaintiff a standard sick leave letter and a short term disability form to be completed and returned by plaintiff.

The short term disability form used by defendant consists of two parts, a section to be completed and signed by the employee and a section to be completed and signed by the employee's treating physician. The sick leave letter advises the employee, *inter alia,* that an unreasonable delay in returning the

short term disability form may result in an unverified sick leave and the receipt of absentee occurrences for the work days missed. Plaintiff received these forms on February 1, 1996.

On February 2, 1996, plaintiff telephoned defendant and requested an indefinite extension of his sick leave. Again, defendant granted plaintiff's request subject to verification from plaintiff's treating physician. Ms. Roland sent plaintiff an "extended sick leave" letter and another short term disability form. Plaintiff received these forms on February 7, 1996.

On February 12, 1996, defendant received from plaintiff the first short term disability form relating to his initial request for sick leave. Plaintiff's physician, Dr. Glenn Barr, indicated that plaintiff had sustained a lumbar sacral injury. With respect to treatment, Dr. Barr recommended anti-inflammatory medications, heat and rest. Moreover, Dr. Barr indicated the frequency of treatment as "weekly." Although Dr. Barr listed plaintiff's prognosis as "guarded," he expected plaintiff to return to work on February 9, 1996.

On February 19, 1996, defendant received from plaintiff the second short term disability form. The information as to treatment and prognosis were identical to the initial form. Plaintiff's expected return to work date, however, was listed as February 20, 1996. On February 21, 1996, plaintiff again telephoned defendant and requested another extension of his sick leave for an indefinite duration.

On February 27, 1996, plaintiff again telephoned defendant to request another extension of his sick leave. Plaintiff indicated that he expected to return to work on March 7, 1996. Accordingly, defendant sent plaintiff another "extended sick leave" letter and a short term disability form. Plaintiff hand-delivered the completed short term disability form to Ms. Roland on March 11, 1997. The form was identical to the two previous short term disability forms with respect to diagno-

---

4. Although not relevant to the court's analysis, the date referenced in plaintiff's affidavit (May 9, 1995) is marked out. The words "July 1995" and "6 months later" are handwritten on the affidavit.

sis, treatment plan, and prognosis. The frequency of treatment, however, had been changed from "weekly" to "monthly." Dr. Barr listed plaintiff's expected return to work date as March 23, 1996.

When plaintiff gave the form to Ms. Roland on March 11, 1996, Ms. Roland informed plaintiff that she was unable to certify his request for an extended sick leave beyond February 20 (the expected return-to-work date of the last approved request) without additional information from plaintiff's physician.[5] Accordingly, Ms. Roland asked plaintiff to sign a release so that she could obtain additional information from his physician to verify plaintiff's sick leave request. Plaintiff refused to sign the release and told Ms. Roland that he would contact Dr. Barr himself. Thus, Ms. Roland informed plaintiff that he had one week, or until March 18, 1996, to obtain the additional information from Dr. Barr.

Plaintiff failed to provide the requested information by March 18, 1996.[6] Ms. Roland notified Kelly Keeton, defendant's Human Resources Specialist, that plaintiff's request for an extension of his sick leave had not been certified. Ms. Keeton terminated plaintiff's employment effective March 19, 1996.

On April 2, 1996, plaintiff filed a second charge of discrimination with the EEOC alleging that he was terminated in retaliation for filing the October 1995 charge and subsequent lawsuit.[7] In September 1996, plaintiff filed a third charge of discrimination. In this charge, plaintiff alleged that his termination violated Title VII and the ADA.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*,

---

**5.** According to Ms. Roland, she wanted to obtain additional information from Dr. Barr, including his office notes, because of certain inconsistencies contained in the short-term disability forms and because the completed forms bore a signature stamp rather than an actual signature.

**6.** Apparently, plaintiff signed the release during a visit with Ms. Roland on March 14, 1996. Plain-

tiff, however, refused Ms. Roland's offer to fax the signed release to Dr. Barr's office and instead took the signed release with him when he left.

**7.** Defendant had no knowledge of plaintiff's complaint until several weeks after plaintiff's termination.

144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Title VII Claims

Plaintiff asserts three claims against defendant under Title VII. First, plaintiff alleges that defendant, on the basis of plaintiff's race, refused to allow plaintiff to return to work after his extended leave until plaintiff had completed a work-hardening program. Second, plaintiff claims that, upon his return from sick leave in February 1995, he was denied his accrued departmental seniority on the basis of his race. Third, plaintiff claims that defendant terminated his employment on the basis of his race. Defendant moves for summary judgment on all claims. As set forth below, the court denies defendant's motion with respect to plaintiff's claim that defendant forced him to complete a work-hardening program, denies defendant's motion with respect to plaintiff's loss-of-seniority claim and grants defendant's motion with respect to plaintiff's discriminatory discharge claim.

### A. Discriminatory Placement in Work-Hardening Program

In support of its motion for summary judgment on plaintiff's claim that defendant refused to allow plaintiff to return to work after his extended leave period until he had completed a work-hardening program, defendant maintains that this claim is not properly before the court because the claim was never the subject of an EEOC charge. The court disagrees. As plaintiff suggests, his October 1995 EEOC charge unequivocally states that plaintiff was not allowed to return to work until he had completed a work-hardening program, that other employees did not have similar conditions placed upon them, and that plaintiff believed he was treated differently because of his race. Because defendant has moved for summary judgment on this claim based only on plaintiff's purported failure to exhaust his administrative remedies, a basis which lacks merit, summary judgment must be denied.

### B. Loss of Accrued Seniority

In support of its motion for summary judgment, defendant argues that plaintiff has not adequately exhausted his administrative remedies with respect to this claim. In the alternative, defendant argues that plaintiff's claim is moot because his seniority was restored as a result of the grievance process less than three months after plaintiff returned to work. As set forth below, the court concludes that plaintiff has adequately exhausted his administrative remedies with respect to his loss-of-seniority claim and that plaintiff's claim is not rendered moot simply because defendant restored plaintiff's seniority. Thus, defendant's motion for summary judgment is denied with respect to plaintiff's loss-of-seniority claim.

#### 1. Exhaustion of Remedies

■ As an initial matter, defendant contends that plaintiff's claim with respect to his loss of accrued seniority is not properly before the court. Specifically, defendant maintains that plaintiff's claim was not raised in his October 1995 EEOC charge. It is uncontroverted that plaintiff did not include any allegations with respect to his loss of seniority in his charge of discrimination. In an affidavit filed contemporaneously with his EEOC charge, however, plaintiff specifically refers to several incidents which occurred "[w]ithin the past 300 days." One incident cited by plaintiff is the loss, and subsequent restoration, of his accrued departmental seniority for the period of his sick leave. The question before the court, then, is whether plaintiff's specific reference to his loss of seniority in his EEOC affidavit rather than his EEOC charge is sufficient for exhaustion purposes. For the reasons set forth below, the court concludes that plaintiff's reference in his EEOC affidavit to his loss of seniority is sufficient.

Although the Tenth Circuit has not had the opportunity to analyze the nature of the relationship between an EEOC charge and corresponding affidavit, the Circuit has recognized that "complaints to the EEOC must be liberally construed in order to accomplish the purposes of [Title VII], since such complaints are written by laymen not versed either in the technicalities of pleading or jurisdictional requirements of [Title VII]." *See Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc.,* 702 F.2d 857, 859 (10th Cir.1983) (quoting *Romero v. Union Pacific Railroad,* 615 F.2d 1303, 1311 (10th Cir.1980)). *See also DeVoe v. Medi–Dyn, Inc.,* 782 F.Supp. 546, 554 (D.Kan.1992) (reviewing charge drafted without assistance of counsel under a "lenient standard of scrutiny"); *Moore v. Norfolk & W. Ry. Co.,* 731 F.Supp. 1015, 1017–18 (D.Kan.1990) (same). Moreover, the Seventh Circuit has specifically addressed the issue before the court today and has held that, in assessing the scope of an EEOC charge, the court may consider statements in a sworn affidavit filed in support of the EEOC charge. *See, e.g., Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 502 (7th Cir.1994); *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110–11 (7th Cir.1992) (plaintiff's EEOC affidavit contained "explicit reference" to types of discrimination alleged in judicial complaint); *Box v. A & P Tea Co.,* 772 F.2d 1372, 1375 (7th Cir.1985) (handwritten addendum to typed charge of race discrimination, also suggesting sex discrimination, sufficient to permit judicial claim). In light of the Tenth Circuit's mandate of liberal construction, the court finds the Seventh Circuit's approach persuasive. Here, plaintiff filed his October 1995 EEOC charge without the assistance of counsel. Significantly, plaintiff's allegations with respect to his loss of seniority are specifically contained in his EEOC affidavit. In such circumstances, the court concludes that plaintiff's failure to reference his loss-of-seniority claim in his EEOC charge is not fatal to his claim. *See also Lange v. Cigna Individual Fin. Servs. Co.,* 759 F.Supp. 764, 768–69 (D.Kan.1991) (individual supervisors properly named as defendants even though they were not named as respondents in plaintiff's EEOC charge where individuals were specifically named in

EEOC affidavit and plaintiff was proceeding without aid of counsel). Thus, the court concludes that plaintiff has adequately exhausted his administrative remedies with respect to his loss-of-seniority claim.

2. Defendant's Mootness Argument

Defendant further asserts that plaintiff's claim with respect to his loss of seniority is moot because defendant restored plaintiff to full seniority less than three months after his return to work. As set forth below, the court concludes that plaintiff's claim is not rendered moot simply because defendant subsequently restored plaintiff's accrued seniority. Thus, because defendant fails to advance any other arguments with respect to plaintiff's prima facie case and fails to proffer a legitimate, nondiscriminatory reason for its actions, the court denies defendant's motion for summary judgment with respect to plaintiff's loss-of-seniority claim.

 In order to state a prima facie case of race discrimination, plaintiff must show: (1) that he is a member of a racial minority; (2) that he suffered an adverse employment action; and (3) that similarly situated employees were treated differently. *Trujillo v. University of Colorado Health Sciences Center,* 157 F.3d 1211, 1212 (10th Cir.1998) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). In its motion for summary judgment, defendant maintains that plaintiff's claim with respect to his departmental seniority is moot because his seniority was later restored through the grievance process. The essence of defendant's argument, then, is that plaintiff has not suffered an adverse employment action for purposes of establishing his prima facie case. The court disagrees. In light of the "remedial nature of Title VII, the law in this circuit liberally defines adverse employment action." *Gunnell v. Utah Valley State College,* 152 F.3d 1253, 1263 (10th Cir.1998) (quoting *Jeffries v. State of Kansas,* 147 F.3d 1220, 1231–32 (10th Cir.1998)). Moreover, the Tenth Circuit has recognized that employment actions can be adverse even if such actions are subsequently withdrawn. *See Roberts v. Roadway Express, Inc.,* 149 F.3d 1098, 1104 (10th

Cir.1998) (termination from employment constitutes adverse employment action even though plaintiff's employment was subsequently reinstated after intervention by his union). In other words, the mere fact that an employer retracts an adverse employment action does not absolve the employer from liability if the initial employment decision was based on an unlawful, discriminatory motive. Thus, plaintiff here is entitled to relief for defendant's refusal to give plaintiff his accrued seniority, even though his seniority was restored, if plaintiff can establish that defendant's employment action was motivated, at least in part, by plaintiff's race. Thus, because defendant has raised only an argument that plaintiff's claim is moot, which lacks merit, the court denies summary judgment on plaintiff's loss-of-seniority claim.

### C. Termination of Employment

Plaintiff also claims that defendant terminated his employment on the basis of his race. Specifically, plaintiff claims that he was "singled out" when defendant required him to sign a medical release and required him to obtain his medical records even though such conduct was not authorized under the collective bargaining agreement. Plaintiff asserts that he was "terminated for failure to meet an arbitrary deadline which [defendant] had no right to impose." Defendant maintains that plaintiff cannot establish a prima facie case of race discrimination and, in any event, has not come forward with sufficient evidence that defendant's decision to terminate his employment was motivated by racial bias. As set forth below, the court agrees with defendant and grants summary judgment in its favor on plaintiff's discriminatory discharge claim.

Because plaintiff has not come forward with direct evidence of discrimination, the court analyzes his discriminatory discharge claim under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the summary judgment context, plaintiff initially must raise a genuine issue of material fact on each element of his prima facie case of discrimination. *See Randle v. City of*

*Aurora*, 69 F.3d 441, 451 (10th Cir.1995). Once plaintiff establishes his prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *EEOC v. Flasher Co.*, 986 F.2d 1312, 1317–19 (10th Cir.1992)). If the defendant comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir.1994)). If the plaintiff proffers such evidence, the motion for summary judgment must be denied. *Id.*

■ To survive summary judgment, the parties agree that plaintiff must first come forward with sufficient evidence to establish his prima facie case of race discrimination, including evidence that similarly situated employees outside plaintiff's protected class were treated differently. *See Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1212 (10th Cir.1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir.1997). Plaintiff has offered no evidence that non-African-American employees received different treatment under defendant's sick leave or absentee policies. Thus, plaintiff has not met his burden of establishing a prima facie case of race discrimination. For this reason, summary judgment in favor of defendant is proper. *See Aramburu*, 112 F.3d at 1406 (affirming summary judgment in favor of defendant where plaintiff failed to present evidence that he was treated differently than similarly situated non-minority employees).

■ Even if plaintiff had established his prima facie case, the court would nonetheless grant defendant's motion for summary judgment because plaintiff has failed to come forward with sufficient evidence from which a reasonable jury could conclude that defendant's proffered reasons for terminating his employment were pretextual. According to defendant, it terminated plaintiff's employ-

ment after plaintiff failed to provide additional verification from his treating physician concerning his need for extended sick leave.

In his papers, plaintiff suggests that defendant's proffered reason is pretextual because the collective bargaining agreement does not specifically authorize defendant to require its employees to sign a medical release and obtain records from a treating physician. Plaintiff's belief that Ms. Roland's conduct was not authorized by the collective bargaining, by itself, does not establish pretext. *See Udo v. Tomes*, 54 F.3d 9, 14 (1st Cir.1995) (fact that employer may have violated collective bargaining agreement when it failed to recall plaintiff does not by itself permit inference that plaintiff was laid off because of age or race). *See also Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir.1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual.") (citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 623 (10th Cir.1994) ("To the extent there is any inconsistency at all [in following the employer's internal procedures], it only goes to process and not to purpose or motivation, and could not provide a sufficient basis for a jury to find pretext for age discrimination.")). Significantly, plaintiff offers no evidence that defendant interpreted the collective bargaining agreement differently with respect to non-African-American employees or that plaintiff's race played any part in Ms. Roland's request for additional documentation. Moreover, Ms. Roland's interpretation of the collective bargaining agreement "was not so unreasonable as to defy credulity." *Randle*, 69 F.3d at 454. Thus, plaintiff's argument with respect to the collective bargaining agreement fails to cast doubt on defendant's legitimate, nondiscriminatory reason for terminating plaintiff's employment and cannot support an inference of pretext.[8]

■ In further support of his pretext analysis, plaintiff claims that two supervisors used racial slurs in the workplace. Specifically, plaintiff testified that on one occasion, nearly ten years ago, Ed Michaels told Fred Fisher, a Union steward, that he "didn't look out for niggers." Plaintiff also testified that, sometime prior to 1991, he overheard a conversation between a supervisor, Bob Jeffries, and another employee. When the employee asked Mr. Jeffries to pass him a clipboard, Mr. Jeffries allegedly told the employee: "Get it yourself. I'm not your nigger." These isolated comments, if made, although highly offensive and utterly intolerable, would nonetheless be insufficient to support an inference of pretext. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994) (stray remarks, unrelated to the challenged action, are "insufficient to create a jury issue"). There is no evidence in the record that these individuals played a part in the decision to terminate plaintiff's employment or any other decision with respect to plaintiff's employment. Moreover, the comments were made years before plaintiff's discharge. In the absence of any nexus between these individuals and the employment decision in question, these isolated comments cannot support an inference of pretext. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998) (in order to rely on discriminatory comments, plaintiff must show that the comments were made by a decisionmaker, and that there was a nexus between the discriminatory statements and the decision to terminate plaintiff's employment).

Ultimately, plaintiff is left with only his subjective beliefs that defendant terminated his employment based on his race. It is uncontroverted that Kelly Keeton made the decision to terminate plaintiff's employment. When asked why he believed Ms. Keeton discriminated against him on the basis of his race when she terminated his employment, plaintiff testified, "[I]f you don't have a reason to do something, the only other reason I

---

8. In any event, a review of the sick-leave provisions contained in the collective bargaining agreement reveals the weakness of plaintiff's argument. The contract expressly states that sick leave will be granted "provided the medical di-

agnosis validates the illness" for the requested period. This provision implicitly suggests that defendant may request additional information or documentation with respect to an employee's illness.

can come up with is because of color.... I can't think of anything else." It is well settled that subjective beliefs of discrimination are not sufficient to defeat summary judgment. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1408 n. 7 (10th Cir.1997) (subjective beliefs and mere conjecture that employer discriminated against plaintiff insufficient to preclude summary judgment) (citations omitted). When asked why he believed Ms. Roland discriminated against him on the basis of his race or conspired against plaintiff, plaintiff replied, "I can only speculate." Clearly, plaintiff has not come forward with sufficient evidence from which a reasonable jury could conclude that Ms. Keeton's or Ms. Roland's actions were motivated by plaintiff's race. *See Hom v. Squire*, 81 F.3d 969, 974–75 (10th Cir.1996) (plaintiff's speculation that his protected speech led to his discharge "not enough evidence for a reasonable jury to find in his favor").

In sum, plaintiff has simply not set forth sufficient evidence that defendant's proffered reasons for its actions were pretextual or motivated by plaintiff's race. Summary judgment is granted in favor of defendant on plaintiff's discriminatory discharge claim.

## IV. ADA Claims

Plaintiff also alleges that defendant discriminated against him on the basis of a disability by requiring plaintiff to complete a work-hardening program before allowing him to return to work in 1995 and by terminating his employment in 1996. Plaintiff also asserts that defendant failed to accommodate his alleged disability when it refused to offer him light duty or modified work during his sick leave from November 1991 through February 1995. In support of its motion for summary judgment, defendant urges that plaintiff does not have a "disability" as that term is defined in the ADA. As set forth in more detail below, the court agrees with defendant. Thus, summary judgment is granted on plaintiff's discrimination and failure to accommodate claims.

### A. *Disability Discrimination*

The ADA prohibits a covered entity from discriminating against a "qualified individual with a disability" because of the individual's disability with respect to terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 897 (10th Cir.1997); *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1123 (10th Cir. 1995) (quoting *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995) (quoting 42 U.S.C. § 12111(8))). Thus, to establish a claim of discrimination under the ADA, plaintiff must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the defendant terminated his employment because of his disability. *See Sutton*, 130 F.3d at 897 (citing *Siemon v. AT&T Corp.*, 117 F.3d 1173, 1175 (10th Cir. 1997); *White*, 45 F.3d at 360–61); *MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1443 (10th Cir.1996). As set forth in more detail below, the court concludes that plaintiff does not have a "disability" within the meaning of the ADA. Thus, summary judgment in favor of defendant on plaintiff's disability discrimination claims is appropriate.

Under the ADA, a "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Sutton*, 130 F.3d at 897 (quoting 42 U.S.C. § 12102(2)). Plaintiff relies only upon subsection (A) of § 12102(2) in an effort to establish that he is disabled under the ADA. Specifically, plaintiff alleges that the "long term chronic pain" in his chest and back is a physical impairment that substantially limits his ability to lift. In support of this assertion, plaintiff relies solely on the results of a series of functional evaluations conducted in connection with plaintiff's work-hardening program. These functional evalu-

ations reflect a "deficit" in "dynamic lifting to shelf height." Although the most recent evaluation indicates that plaintiff is capable of lifting 75 pounds to shelf height on an occasional basis, the evaluation notes that plaintiff experiences "discomfort with maximum overhead lifting."

Although lifting is a major life activity, *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1173 (10th Cir.1996) (citing 29 C.F.R. § 1630.2(i)), plaintiff's lifting restriction is not a substantial limitation on that activity. In order for an impairment to be considered "substantially limiting," the individual must be

(i) unable to perform a major life activity that the average person in the general population can perform; or

(ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Sutton*, 130 F.3d at 900 (quoting 29 C.F.R. § 1630.2(j)(1)). Plaintiff's argument that his lifting restriction is sufficient to constitute a disability is unconvincing. First, plaintiff fails to offer any evidence comparing his lifting ability to the capabilities of an average person in the general population. Second, several courts, including the Tenth Circuit, have found restrictions far more limiting than plaintiff's insufficient as a matter of law to constitute a disability within the meaning of the ADA. *See, e.g., Snow v. Ridgeview Med. Center*, 128 F.3d 1201, 1207 (8th Cir. 1997) (25–pound lifting restriction, without more, is insufficient to constitute a disability within the meaning of the ADA); *Thompson v.. Holy Family Hosp.*, 121 F.3d 537, 540 (9th Cir.1997) (restriction from lifting more than 25 pounds on a continuous basis, more than 50 pounds twice a day, and more than 100 pounds once a day is not substantially limiting); *Gibbs v. St. Anthony Hosp.*, No. 96–6063, 1997 WL 57156, at *2 (10th Cir. Feb.12, 1997) (25–pound repetitive lifting restriction, without more, insufficient to demonstrate substantial limitation on major life activity of lifting where plaintiff failed to offer evidence comparing her lifting restrictions to capabilities of average person in general population); *Williams v. Channel Master Satellite Systems, Inc.*, 101 F.3d 346, 349 (4th Cir.1996) (25–pound lifting restriction—particularly in light of average person's ability—does not constitute a significant restriction on one's ability to lift, work or perform any other major life activity), *cert. denied,* —— U.S. ——, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997); *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir.1996) (inability to lift 44–56 pound containers continuously all day does not render person substantially limited in major life activity of working); *Barnard v. ADM Milling Co.*, 987 F.Supp. 1337, 1342 (D.Kan.1997) (42–pound restriction insufficient to show substantial limitation on major life activity of lifting). *See also South v. NMC Homecare, Inc.*, 943 F.Supp. 1336, 1341 (D.Kan.1996) (plaintiff's ability to lift was not "substantially limited" simply because he experienced pain and discomfort when lifting objects weighing "hundreds of pounds"; the "average person in the general population unequivocally would experience discomfort when lifting such objects.").

In sum, the court concludes that plaintiff does not have a "disability" within the meaning of subsection (A) of § 12102(2). Accordingly, the court grants defendant's motion for summary judgment with respect to plaintiff's disability discrimination claims.

### B. Failure to Accommodate

Plaintiff also claims that defendant failed to accommodate his alleged disability. In order to establish a claim for failure to accommodate a disability, plaintiff must show that (1) he is a qualified individual within the meaning of the ADA; (2) defendant was aware of his disability; (3) he requested a reasonable accommodation; and (4) defendant denied his request for a reasonable accommodation. *See Butler v. City of Prairie Village*, 974 F.Supp. 1386, 1401 (D.Kan. 1997).

As set forth above, the court concludes that plaintiff is not a qualified individual within the meaning of the ADA because he does not have a "disability" as that term is defined in the ADA. Thus, plaintiff cannot

satisfy the first element of his prima facie case of failure to accommodate a disability. Defendant's motion for summary judgment on plaintiff's failure to accommodate claim is granted.

## V. Retaliation

Finally, plaintiff claims that defendant terminated his employment in retaliation for filing an EEOC charge in October 1995 and a subsequent complaint in January 1996.[9] The court analyzes plaintiff's retaliation claims under the *McDonnell Douglas* burden-shifting approach. *See Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir.1996). Plaintiff must first establish a prima facie case of retaliation by demonstrating that (1) he engaged in protected activity; (2) he suffered an adverse employment action either after or contemporaneous with his protected activity; and (3) a causal connection exists between his protected activity and the adverse employment action. *Id.* (citing *Love*, 738 F.2d at 385 (citing *Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir.1982))).

Defendant concedes that plaintiff has demonstrated the first and second elements of his prima facie case. Defendant insists, however, that plaintiff cannot show a "causal connection" between his October 1995 EEOC charge or subsequent lawsuit and his termination in March 1996. The court agrees. For the reasons set forth below, the court grants defendant's motion for summary judgment on plaintiff's retaliation claims.

In order to establish a causal connection between his protected activity and his termination, "plaintiff must show that the individual who took adverse action against him knew of [plaintiff's] protected activity." *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993) (citing *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 635 (10th Cir.1988)); *Douglas v. General Motors Corp.*, 982 F.Supp. 1448, 1452 (D.Kan.1997) (citing *Williams*, 983 F.2d at 181). It is uncontroverted that none of defendant's agents, much less the relevant decisionmakers, knew about

plaintiff's lawsuit until several weeks after plaintiff's termination. Thus, plaintiff cannot establish a causal connection between the filing of his lawsuit and his termination. *See Williams*, 983 F.2d at 181 (affirming grant of summary judgment on retaliation claim where plaintiff failed to provide any evidence that decisionmaker knew of complaints); *Didde v. Unified Sch. Dist. No. 207*, 12 F.Supp.2d 1219, 1224 (D.Kan.1998) (no reasonable jury could find causal connection existed where decisionmakers did not know of plaintiff's EEOC complaint at time of employment decision); *Carney v. Pena*, 992 F.Supp. 1285, 1292–93 (D.Kan.1998) (summary judgment granted on retaliation claim where none of decisionmakers were aware of protected activity). Defendant's motion for summary judgment is granted on plaintiff's retaliation claim to the extent it is based on plaintiff's filing a lawsuit in January 1996.

It is also uncontroverted that Kelly Keeton, the person who made the decision to terminate plaintiff's employment, had no knowledge of plaintiff's October 1995 EEOC charge. Although plaintiff argues that a reasonable jury could infer that Ms. Keeton had knowledge of plaintiff's EEOC charge, his arguments are unconvincing. First, plaintiff asserts that Ms. Keeton reviewed plaintiff's personnel file prior to terminating plaintiff's employment and that the file contained a copy of plaintiff's charge. Plaintiff misstates Ms. Keeton's testimony. Ms. Keeton testified that, prior to terminating plaintiff's employment, she reviewed plaintiff's absentee record and information provided to her by Ms. Roland. Second, plaintiff argues that Ms. Keeton's knowledge can be inferred because she sent a copy of plaintiff's charge to defendant's in-house counsel on April 8, 1996—three weeks after plaintiff's discharge. A more likely inference to be drawn from this fact is that Ms. Keeton had received plaintiff's April 2, 1996 EEOC charge concerning his termination, which referenced plaintiff's earlier charge. In any event, the mere fact that Ms. Keeton knew about plaintiff's charge in the aftermath of his termi-

---

**9.** Although plaintiff alleges retaliation under both Title VII and the ADA, it is unclear whether the October 1995 charge and subsequent lawsuit were contemplated under the ADA. In any event, the court's analysis is the same under either theory. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir.1997) (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir.1996)).

nation, standing by itself, is insufficient to support an inference that she knew about plaintiff's charge three weeks earlier.

Finally, plaintiff suggests that a reasonable jury could infer that Ms. Keeton had knowledge of plaintiff's October 1995 EEOC charge because Doug Healy, Ms. Keeton's supervisor and the individual to whom plaintiff's EEOC charge was sent, presumably would have shared the information with her. The speculation of plaintiff's counsel, unsupported by any record evidence, is inadequate to permit such an inference. *See Hom v. Squire*, 81 F.3d 969, 974–75 (10th Cir.1996) (plaintiff's speculation that his protected speech led to his termination insufficient to create a jury issue). Moreover, there is no evidence suggesting that Mr. Healy communicated with Ms. Keeton about any aspect of plaintiff's employment, much less plaintiff's EEOC charge.

■ In any event, neither Doug Healy's nor Ms. Keeton's knowledge of plaintiff's EEOC charge creates a genuine issue of material fact on plaintiff's retaliation claim. Awareness of a plaintiff's protected activity, without more, does not create an inference of unlawful retaliation. Plaintiff must still establish the causation element of his prima facie case. Although the Tenth Circuit has held that protected conduct closely followed by adverse action may support an inference for retaliatory motive, *see Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir.1996), the circuit has underscored that unless the employer's adverse action "is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997).

Defendant terminated plaintiff's employment nearly five months after Mr. Healy received plaintiff's EEOC charge. Thus, plaintiff must come forward with additional evidence of causation. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period between plaintiffs' protected activity and her termination, standing alone, does not demonstrate a causal connection). Plaintiff offers no additional evidence with respect to Ms. Keeton's motivation in terminating his employment. The only additional evidence offered by plaintiff with respect to Doug Healy is that during the formal grievance process with the union after plaintiff's termination, Mr. Healy offered to reinstate plaintiff if plaintiff would drop his EEOC complaints against the company. Contrary to plaintiff's argument, this evidence does not suggest that plaintiff's protected activity was a motivating factor in the decision to terminate his employment. An employer's requirement that an employee dismiss pending EEOC charges in exchange for reinstatement or a monetary settlement is a legitimate condition that defendant-employers and plaintiff-employees routinely include in settlement agreements. Such an agreement simply cannot be construed as evidence of a retaliatory motive for the adverse employment action at issue. To hold otherwise would discourage employers from exploring settlement possibilities with aggrieved employees for fear of facing yet another lawsuit, based on retaliation stemming from the agreement (or suggestion) that the employee dismiss pending charges or complaints in exchange for reinstatement or a monetary settlement.

Moreover, there is simply no evidence in the record that Mr. Healy (or Ms. Keeton, assuming an inference could be drawn that she knew about plaintiff's charge), at the time of plaintiff's discharge, had any concerns about plaintiff's October 1995 charge. Significantly, plaintiff's charge was dismissed three weeks after plaintiff filed it. The EEOC did not require any action or response from defendant. Moreover, as far as anyone knew at the time of plaintiff's termination, plaintiff had not pursued his charge through the judicial system.

In sum, the nexus between Ms. Keeton's or Mr. Healy's knowledge of plaintiff's EEOC filing and plaintiff's termination is simply too attenuated to allow a reasonable jury to conclude that a causal connection existed between plaintiff's filing his EEOC charge and defendant's decision to terminate his employment five months later. Summary judgment is granted in favor of defendant on plaintiff's retaliation claim.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for summary judgment (doc. # 72) is granted in part and denied in part. Specifically, the court denies defendant's motion with respect to plaintiff's claim that defendant refused to allow plaintiff to return to work until he had completed a work-hardening program and denies defendant's motion with respect to plaintiff's loss-of-seniority claim. The court grants defendant's motion with respect to plaintiff's remaining claims.

IT IS SO ORDERED.