Leeann **REED**, Plaintiff,

v.

**UNIFIED SCHOOL DISTRICT NO. 233, Defendant.**

**No. 03–2032–JWL.**

United States District Court, D. Kansas.

Jan. 23, 2004.

---

2000–2001 school year and the 2001–2002 school year, filed suit against defendant alleging that defendant unlawfully discriminated against her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., by restricting her coaching duties and responsibilities at the end of the 2001–2002 school year; by failing to renew plaintiff's coaching contract for the next school year; and by refusing to recommend plaintiff to potential employers. Plaintiff further alleges that defendant's failure to renew plaintiff's coaching contract and refusal to recommend plaintiff to potential employers were based on plaintiff's complaint of discrimination and, thus, constitute unlawful retaliation under Title VII.

This matter is presently before the court on defendant's motion for summary judgment on all of plaintiff's claims (doc. # 43). As set forth in more detail below, the motion is granted in part and denied in part. It is granted with respect to plaintiff's claims that defendant, on the basis of plaintiff's gender, restricted her coaching duties and refused to recommend her to potential employers and is otherwise denied.

## I. Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff first became employed as a coach with defendant in August 2000. She was hired as the head cross-country coach (for both the boys' and girls' team) and the assistant track coach for Olathe South High School. She coached these teams for the 2000–2001 school year and her contract was renewed for the 2001–2002 school year. During plaintiff's two-year tenure with defendant, Robert Kersey was the

Bert S. Braud, Stephen J. Dennis, The Popham Law Firm, P.C., Kansas City, MO, for Plaintiff.

Michael G. Norris, Norris, Keplinger & Hillman, L.L.C., Overland Park, KS, for Defendant.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff, the head cross-country coach at one of defendant's high schools during the

athletic director and assistant principal at Olathe South. Plaintiff reported to Mr. Kersey and Mr. Kersey, in turn, reported to the principal at Olathe South, Dr. Gwen Poss. Beginning in August 2001, plaintiff also began substitute teaching in the Olathe School District.

During plaintiff's two-year tenure at Olathe South, Mr. Kersey received various complaints about plaintiff's performance as a coach. Some of these complaints came from male coaches at Olathe South and concerned plaintiff's efforts to "recruit" to the cross-country team student athletes who had expressed an interest in other sports or had already committed to playing on another team, such as football. Other complaints came from parents and concerned plaintiff's training of athletes outside in inclement or hot weather. Mr. Kersey also received complaints about plaintiff (or her athletes) leaving equipment and uniforms out in the school hallway. Mr. Kersey received a handful of other complaints on various issues. In response to most of these complaints, Mr. Kersey simply notified plaintiff of the complaints; in large part, plaintiff was not disciplined for any of these issues and, in fact, Mr. Kersey admitted that plaintiff was not the only coach to receive such complaints, particularly from parents. Moreover, Mr. Kersey testified in his deposition that none of these complaints, either taken individually or as a whole, would have caused him to recommend the non-renewal of plaintiff's contract for the next year.[1]

On April 19, 2002, plaintiff attended the Kansas University ("KU") Relays, a weekend track event, to help coach Olathe South's track athletes. The head track coach at Olathe South at that time was Tim Quinn. On that day, plaintiff saw an Olathe North High School student named Stephanie Dyke. Plaintiff knew Ms. Dyke prior to this time, having met her while substitute teaching in a science class at Olathe North and having had discussions with Ms. Dyke about track. Plaintiff approached Ms. Dyke at the KU Relays and told her that if she alternated lead legs when hurdling it might prevent her from stumbling on the curves. Plaintiff did not see any problem with providing coaching advice to a student from Olathe North High School during the event, in part because she knew Ms. Dyke and in part because Olathe South did not have any athletes competing in the particular event in which Ms. Dyke was competing.

Later that day, Olathe North's track coach, Mr. Calder, approached plaintiff and expressed anger that she had given coaching advice to one of his athletes. Mr. Calder told plaintiff not to speak to Ms. Dyke again. After the confrontation with Coach Calder, plaintiff agreed to never again offer any coaching advice to Ms. Dyke. On the next day of the KU Relays, April 20, 2002, plaintiff again saw Ms. Dyke and spoke with her. She advised Ms. Dyke that she was sorry about what had happened the prior day and offered to put Ms. Dyke in touch with the track coach at Shawnee Mission Northwest High School who could "jot down a few notes and [she] could learn from them."

On April 21, 2002, Coach Calder sent an e-mail to a number of individuals, including Mr. Kersey, complaining about plaintiff's actions at the KU Relays. In his e-mail,

---

1. Defendant urges that Mr. Kersey had not made up his mind about whether to recommend the renewal of plaintiff's contract prior to April 2002. While Mr. Kersey did testify later in his deposition, when presented with a leading question by his own counsel, that he had not made up his mind one way or the other, he unequivocally testified earlier in his deposition, when questioned by plaintiff's counsel, that he had no reason prior to April 2002 to recommend the non-renewal of plaintiff's coaching contract.

Coach Calder expressed his opinion that it was entirely inappropriate for plaintiff to provide coaching advice to one of his athletes. He further stated that Ms. Dyke reported that she feared that plaintiff was "stalking" her. Mr. Kersey read Coach Calder's message when he arrived at school on Monday morning, April 22, 2002. After receiving the e-mail, Mr. Kersey informed Dr. Poss, the principal at Olathe South, about the incident. Thereafter, he telephoned plaintiff at home and told her that he wanted to meet with her as soon as possible regarding the incident.

Later that morning, plaintiff met with Mr. Kersey. Mr. Kersey advised plaintiff that he had received an e-mail from Coach Calder concerning plaintiff's actions at the KU Relays. Plaintiff advised Mr. Kersey that she had, in fact, offered coaching advice to Ms. Dyke and that she had given coaching advice to Ms. Dyke on prior occasions. Mr. Kersey advised plaintiff that he felt it was inappropriate for her to coach an athlete from a competing school during a track meet. Plaintiff, in turn, told Mr. Kersey that she saw nothing wrong with what she had done, given the fact that she knew Ms. Dyke and no students from Olathe South were competing against her in the event. At some point during this meeting, Mr. Kersey told plaintiff that she would not be returning the next school year as a cross-country coach or as an assistant track coach. Mr. Kersey also advised plaintiff that he would not be comfortable recommending plaintiff to potential employers if she failed to acknowledge her wrongdoing in giving coaching advice to another team's student athlete or if she blamed Coach Quinn or Coach Calder for what happened at the KU Relays. After this meeting, plaintiff went to Olathe East High School to substitute teach.

Later that afternoon, plaintiff again met with Mr. Kersey. During this meeting, Mr. Kersey advised plaintiff that she could not continue to coach at Olathe South (as an assistant track coach as it was track season as opposed to cross-country season) for the balance of the school year unless she agreed to certain restrictions on her coaching duties. Specifically, Mr. Kersey told her that she could only coach those athletes assigned to her by Coach Quinn, the head track coach; that she had to refrain from coaching athletes from other schools; and that she could not attend any track meets.

On April 26, 2002, plaintiff again met with Mr. Kersey, this time for the purpose of discussing whether plaintiff would agree to the restrictions placed on her role as assistant track coach. At the beginning of the meeting, plaintiff gave to Mr. Kersey a letter that she had written in which she stated her belief that Mr. Kersey was discriminating against plaintiff on the basis of her gender. According to plaintiff, after Mr. Kersey read the letter, he became angry and said to her, "How dare you think that." Plaintiff further testified that Mr. Kersey expressly told her at that time that he would not give her a letter of recommendation because she had accused him of discriminating against her. Plaintiff informed Mr. Kersey during the meeting that she would not continue to coach under the restrictions created by Mr. Kersey. Thereafter, plaintiff received a letter from Mr. Kersey stating that she was suspended from her coaching duties immediately due to her unwillingness to follow the restrictions discussed in their April 22, 2002 meeting. Eventually, plaintiff agreed to the restrictions and returned to track practice on May 6, 2002. The restrictions were lifted on May 16, 2002, the day before the regional track meet. The record is unclear as to why the restrictions were lifted at that time.

On May 22, 2002, Dr. Poss and Mr. Kersey sent a letter to Dr. Lowell Ghosey, director of secondary personnel for the Olathe School District, in which they recommended that plaintiff's coaching contract not be renewed for the following school year. In their letter, Dr. Poss and Mr. Kersey cited as reasons for their recommendation concerns about "students' safety and health;" plaintiff's "failure to follow District and KSHSAA policy;" and plaintiff's "inability to work with others." Based upon the recommendation made by Dr. Poss and Mr. Kersey, as well as the information that Dr. Ghosey had learned about plaintiff's actions at the KU Relays, Dr. Ghosey made the decision not to renew plaintiff's coaching contract for the next year.

On May 28, 2002, plaintiff received a letter from Dr. Ghosey advising her that defendant had decided not to offer her a coaching contract for the 2002–2003 school year. Despite the fact that plaintiff's coaching contract was not renewed, she remained eligible to substitute teach in the Olathe School District. Ultimately, defendant hired another female, Jennifer Mullen, to replace plaintiff as the head cross-country coach and assistant track coach.

Additional facts will be provided as they relate to plaintiff's particular claims.

## II. Summary Judgment Standard

■ Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is

"essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

■ The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler*, 144 F.3d at 671).

■ Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the

event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and in-expensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1); *see also Kaster v. Safeco Ins. Co. of Am.,* 82 Fed. Appx. 28, 30, 2003 WL 22854633, at *2 (10th Cir.2003) (affirming the district court's grant of summary judgment in favor of defendant in an ADEA case where the plaintiff had failed to present evidence sufficient for a reasonable jury to conclude that Safeco's employment decisions were age-related); *Young v. White,* 71 Fed. Appx. 819, 820, 2003 WL 21940941, at *1–2 (10th Cir.2003) (affirming district court's grant of summary judgment in favor of defendant in race discrimination and retaliation context).

## III. Gender Discrimination

In the pretrial order, plaintiff asserts that defendant discriminated against plaintiff on the basis of her gender by restricting her coaching duties and responsibilities at the end of the 2001–2002 school year; by failing to renew plaintiff's coaching contract for the next school year; and by refusing to recommend plaintiff to poten-

tial employers. The basic allocation of burdens for a disparate treatment claim is set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a prima facie case of discrimination, which in a Title VII case requires her to show that she is a member of the class protected by the statute; that she suffered an adverse employment action; that she was qualified for the position at issue; and that she was treated less favorably than others not in the protected class or that the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Garrett v. Hewlett Packard Co.,* 305 F.3d 1210, 1221 (10th Cir.2002); *Sanchez v. Denver Pub. Schs.,* 164 F.3d 527, 531 (10th Cir.1998). If she establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *See id.* If defendant offers a legitimate, nondiscriminatory reason for its actions, the burden reverts to plaintiff to show that defendant's proffered reason was a pretext for discrimination. *See id.*

### A. Plaintiff's Prima Facie Case

In its motion for summary judgment, defendant first contends that plaintiff's claims must be dismissed as she cannot establish a prima facie case of discrimination.[2] Specifically, defendant asserts that plaintiff cannot show that she was qualified for the coaching position; cannot show that the work restrictions placed upon her

2. Defendant maintains that plaintiff has asserted in the pretrial order that she has to prove additional elements to establish a prima facie case of discrimination (*e.g.,* that her gender was a motivating factor in defendant's decisions) and that plaintiff should be held to those elements identified by her in the pretrial

order. This argument is rejected. Plaintiff does not state in the pretrial order that she has to prove these additional elements as part of her prima facie case; she states only that she has to prove these elements ultimately to prevail on her claim of gender discrimination.

or Mr. Kersey's refusal to provide her a recommendation were adverse employment actions; and cannot show that similarly situated employees were treated differently. The court addresses each of these arguments in turn.

### 1. "Qualified for the Position"

■ Defendant maintains that plaintiff cannot establish that she was qualified for the coaching job in that she was not performing her job satisfactorily. In support of this argument, defendant highlights evidence showing that plaintiff "was involved in a number of performance-related incidents" during her tenure as a coach at Olathe South, including but not limited to the incident at the KU Relays in April 2002. Of course, defendant also asserts that plaintiff's unsatisfactory job performance was the primary reason for defendant's decision to restrict plaintiff's coaching responsibilities and its decision not to renew plaintiff's contract. In essence, then, defendant urges the court to consider its proffered nondiscriminatory reasons for its employment decisions in connection with analyzing plaintiff's prima facie case. Stated another way, defendant suggests that plaintiff must disprove defendant's proffered reasons for its employment decisions in order to establish her prima facie case.

■ As the Tenth Circuit has recognized, such a legal analysis would inappropriately short-circuit the *McDonnell Douglas* framework at the prima facie stage and frustrate plaintiff's ability to establish that defendant's proffered reasons are pretextual. *See, e.g., EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192–94 (10th Cir.2000) (and cases cited therein). Thus, the court will not analyze defendant's assessment of plaintiff's performance at the prima facie stage. Rather, for purposes of assessing plaintiff's prima fa-

cie case, the court need only conclude that plaintiff has shown through credible evidence, including her own testimony, that she was at least minimally qualified for the position she held, even if defendant disputes that evidence. *See id.* at 1193–94. Here, plaintiff has come forward with evidence, including her own testimony, that her performance was adequate and that she was performing all the duties of her job. Indeed, even Mr. Kersey testified in his deposition that despite the numerous "performance-related" problems that plaintiff had prior to April 2002, he never had any reason to recommend to anyone prior to April 2002 that plaintiff's contract not be renewed. Thus, defendant's argument concerning the "qualified" prong of plaintiff's prima facie case is denied.

### 2. Adverse Employment Actions

Defendant next asserts that plaintiff cannot establish a prima facie case with respect to her claims that defendant restricted her coaching duties and responsibilities at the end of the 2001–2002 school year and refused to recommend plaintiff to potential employers because these actions do not constitute "adverse employment actions." The court begins with plaintiff's claim that defendant placed certain restrictions on her ability to perform her job as head cross-country coach. While the parties dispute the specific contours of the restrictions that Mr. Kersey initially placed on plaintiff, Mr. Kersey generally advised plaintiff that she could continue to coach at Olathe South for the remainder of the 2001–2002 school year only if she agreed to coach only those athletes assigned to her by Mr. Quinn, the head track coach; to refrain from coaching athletes from other schools; and to not attend any track meets.

■ According to defendant, the restrictions cannot constitute an adverse employ-

ment action because they were lifted on May 16, 2002–less than 4 weeks after they were implemented. The court has previously rejected analogous arguments and, for the same reasons, does so here. *See Horizon Holdings,, LLC v. Genmar Holdings, Inc.,* 241 F.Supp.2d 1123, 1139 n. 7 (D.Kan.2002) (rejecting argument that plaintiff did not suffer an adverse employment action with respect to her raise because defendants eventually gave plaintiff a raise and made it retroactive to the date when she would otherwise have received it); *Kennedy v. General Motors Corp.,* 226 F.Supp.2d 1257, 1265 (D.Kan.2002) (rejecting defendant's argument that disciplinary suspensions were not adverse employment actions where they were ultimately cleared from record and defendant agreed to pay plaintiff for all lost time); *Reese v. Owens–Corning Fiberglas Corp.,* 31 F.Supp.2d 908, 914–15 (D.Kan.1998) (rejecting defendant's argument that plaintiff's loss-of-seniority claim was rendered moot where plaintiff's seniority was restored through the grievance process); *see also Roberts v. Roadway Express, Inc.,* 149 F.3d 1098, 1104 (10th Cir.1998) (recognizing that employment actions can be adverse even if such actions are subsequently withdrawn).

▪ Defendant also asserts that the work restrictions were not sufficiently "adverse" because the restrictions did not affect plaintiff's compensation or benefits and were not materially adverse to plaintiff's job status. The court rejects this argument and concludes that genuine issues of material fact exist with respect to whether the restrictions placed upon plaintiff were sufficient to constitute an adverse employment action. Significantly, plaintiff alleges more than a mere alteration of job responsibilities. She alleges that she was,

in essence, stripped of all meaningful coaching responsibilities, including her primary responsibility-coaching students during track meets. In such circumstances, a jury, not the court, must determine whether the restrictions placed upon her work were adverse employment actions as that phrase has been interpreted by the Tenth Circuit. *See Dawson v. Abraham,* 29 Fed. Appx. 561, 562, 2002 WL 120526, at *1–2 (10th Cir.2002) (fact issues remained as to whether agency's transfer of employee to temporary position was adverse employment action where employee alleged that agency stripped her of all duties and responsibilities).[3]

▪ With respect to Mr. Kersey's refusal to recommend plaintiff to potential employers, defendant maintains that such conduct cannot constitute an "adverse employment action" even under the Tenth Circuit's liberal interpretation of that phrase, *see Jeffries v. Kansas,* 147 F.3d 1220, 1231–32 (10th Cir.1998), because the statement was not materially adverse to plaintiff's job status, did not alter plaintiff's job responsibilities and did not impact her compensation. Defendant further asserts that the statement cannot constitute an adverse action because it was of no consequence in that plaintiff never asked Mr. Kersey for a recommendation in any event. In other words, defendant contends that plaintiff suffered no adverse action because Mr. Kersey never actually refused to recommend plaintiff.

The court concludes that Mr. Kersey's refusal to provide plaintiff with a recommendation constitutes an adverse employment action. In so holding, the court finds two Tenth Circuit decisions particularly instructive. In the first case, *Jeffries,* the

---

**3.** Pursuant to Tenth Circuit Rule 36.3(B)(1), the court cites this unpublished opinion for its persuasive value.

plaintiff, a student in a pastoral education program, alleged that her supervisor threatened to stop supervising her and suggested that her contract would not be renewed the following year. *Id.* at 1227. Analyzing these allegations in connection with the plaintiff's retaliation claim, the district court held that the actions did not constitute adverse employment actions because the plaintiff's supervisor continued to supervise the plaintiff and the plaintiff elected not to attempt to renew her contract. *Id.* at 1231. On appeal, the Tenth Circuit reversed the district court's decision. *Id.* at 1231–33. Significantly, the Circuit rejected the idea that the plaintiff had to actually apply for a second year (*i.e.*, attempt to have her contract renewed) in order to show an adverse employment action. *Id.* at 1231. In so finding, the Circuit emphasized that "the threat of non-renewal came from a person who indisputedly had considerable influence over employment and work assignment decisions in the CPE Program." *Id.* at 1232. The second case the court finds persuasive is *Berry v. Stevinson Chevrolet,* 74 F.3d 980 (10th Cir.1996). In *Berry,* the plaintiff's former employer reported to the police that it suspected plaintiff of committing a crime and the plaintiff was subsequently prosecuted for and acquitted of that crime. *Id.* at 984. Analyzing the plaintiff's retaliation claim, the district court held that reporting a suspected crime constituted an adverse employment action. *Id.* at 986. On appeal, the Circuit affirmed the district court's decision and emphasized that a criminal trial "carries a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Id.* at 986–87.[4]

■ For purposes of this case, the court derives two key principles from *Jeffries* and *Berry* in determining whether a particular action constitutes an adverse employment action and,[5] in light of these principles, concludes that Mr. Kersey's refusal to provide plaintiff with a recommendation is an adverse employment action. The first principle, derived from *Jeffries,* is that the mere threat of refusing to rehire an individual (where the individual has not actually put the employer to the test by applying for a position) can constitute an adverse employment action, particularly where there is no reason to believe the threat would not be carried out. Under *Jeffries,* then, Mr. Kersey's statement that he would not recommend plaintiff is sufficient to constitute an adverse employment action despite the fact that plaintiff did not actually ask Mr. Kersey to provide one for her (presumably, because he had already told her that he would not do so and, thus, her asking would have been futile). The second principle, derived from *Berry,* is that an action can be "adverse" even in the absence of proof that the action actually had an adverse impact on future employment opportunities so long as there is simply a risk of such harm. By stating that he would not recommend plaintiff to potential future employers, Mr. Kersey clearly put plaintiff's future employment opportunities at risk.

4. Moreover, the Circuit in *Berry* suggested that the failure to provide a recommendation would constitute an adverse employment action. *See id.* at 986 (stating that "[d]efendants distinguish reporting a suspected crime from adverse employment actions, such as failing to provide a letter of recommendation, demotion, and giving adverse evaluations ....").

5. Although *Jeffries* and *Berry* analyzed the concept of adverse employment actions in the retaliation context, there is no reason to believe that the analysis would not carry over into the disparate treatment context.

For these reasons, the court rejects defendant's argument that Mr. Kersey's failure to provide plaintiff with a recommendation is not an adverse action. *See Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.1998) (listing employee as ineligible for rehire constitutes adverse employment action in retaliation context).

### 3. Similarly Situated Employees

 Defendant also asserts that plaintiff cannot establish a prima facie case of discrimination because she cannot show that similarly situated male coaches were treated differently than her. As an initial matter, the court notes that plaintiff is not necessarily required to come forward with evidence of "similarly situated" employees to establish a prima facie case of discrimination. *See, e.g., Kendrick v. Penske Transp. Services,* 220 F.3d 1220, 1229 (10th Cir.2000). With respect to her claim that defendant failed to renew her contract because of her gender, plaintiff need only show that her position was not eliminated after the nonrenewal of her contract. *See Perry v. Woodward,* 199 F.3d 1126, 1138 (10th Cir.1999). This she has clearly shown, as another individual was hired as Olathe South's head cross-country coach and assistant track coach for the following school year.[6]

 With respect to her claims that Mr. Kersey restricted her coaching duties and responsibilities and refused to recommend her to potential employers, plaintiff attempts to raise an inference of discrimination, *see Garrett v. Hewlett Packard Co.,* 305 F.3d 1210, 1221 (10th Cir.2002) (critical inquiry in proving a prima facie case is "whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination"), by showing that she was treated differently than male coaches in a variety of respects. Plaintiff, for example, testified that Mr. Kersey, on occasion, called her "sweetie" and/or "babe" in his conversations with her-terms that he did not use when speaking with male coaches. Plaintiff also submits evidence suggesting that she was left out of track team meetings, excluded from dinners attended by the male coaches, and forced to drive the school van back from meets by herself when the male coaches all drove together. She further asserts that Mr. Kersey criticized her for "recruiting" athletes from other sports, for leaving clothes and equipment out in the hallway and because parents called from time to time to complain about plaintiff but that Mr. Kersey did not criticize male coaches for such things.

The court concludes that plaintiff's evidence simply does not create an inference of discrimination with respect to her claims that Mr. Kersey restricted her coaching duties and refused to give her a recommendation based on her gender. With respect to plaintiff's assertions that she was left out of track team meetings, excluded from dinners attended by the male coaches, and forced to drive the school van back from meets by herself, the evidence shows only that Coach Quinn was responsible for these actions. Plaintiff directs the court to no evidence suggesting that Mr. Kersey-the only decisionmaker with respect to plaintiff's work restrictions and the recommendation-had any knowledge that plaintiff was excluded from track

---

**6.** In its briefing, defendant makes much of the fact that the individual hired to replace plaintiff was a female and suggests that this, in and of itself, is sufficient to defeat plaintiff's claim. As the Tenth Circuit has held, however, a plaintiff may establish a prima facie case of discrimination without showing that her position was filled by a person who does not possess her protected attribute. *See Perry,* 199 F.3d at 1137–38.

meetings or dinners or that she was forced to drive back from meets alone. Thus, even assuming that Coach Quinn intentionally ostracized plaintiff based on her gender, such evidence does not tend to show that Mr. Kersey took any actions in April 2002 based on plaintiff's gender.

With respect to her allegations that Mr. Kersey criticized her for leaving clothes and equipment out in the hallway but did not criticize male coaches for the same conduct, plaintiff directs the court to no evidence tending to show that Mr. Kersey knew that other coaches had left out equipment and yet failed to criticize them. Thus, while plaintiff highlights testimony from Coach Quinn in which he admits that he has had athletes leave equipment out but has never been criticized by Mr. Kersey, plaintiff herself admitted in her deposition that she had no knowledge of whether these incidents had ever been brought to Mr. Kersey's attention. Without evidence that Mr. Kersey had knowledge of male coaches leaving out equipment and tolerated that behavior, no inference of discrimination may be drawn from the fact that he criticized plaintiff for such conduct. Moreover, while plaintiff alleges in her brief that she was criticized for "recruiting" athletes from other sports, her testimony suggests only that other male coaches criticized her for allegedly recruiting athletes from other sports. She does not suggest that Mr. Kersey criticized her for her actions. Similarly, while she alleges in her brief that Mr. Kersey criticized her when parents called to complain about her, there is no evidence in the record suggesting that Mr. Kersey did so.

The court, then, is left only with evidence that Mr. Kersey called plaintiff "sweetie" and/or "babe" on occasion. In that regard, plaintiff testified that Mr. Kersey called her "babe" on one occasion; it is unclear from plaintiff's testimony how many times Mr. Kersey used the term "sweetie" when talking to plaintiff. Nonetheless, the court concludes that Mr. Kersey's use of these terms (terms that are not facially derogatory or even gender-specific) is insufficient to create any inference of discrimination (in a disparate treatment case as plaintiff has alleged here as opposed to a sexual harassment case) in the absence of evidence that Mr. Kersey somehow devalued plaintiff because of her gender or otherwise treated plaintiff differently because of her gender. At the most, Mr. Kersey's use of these terms indicates that he was cognizant of plaintiff's gender. In the absence of more, however, Mr. Kersey's use of the terms does not tend to indicate that any adverse action that Mr. Kersey might take against plaintiff was based on her gender.

### B. The Pretext Analysis

As plaintiff has established a prima facie case with respect to her claim that defendant failed to renew her contract based on her gender, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its decision. *See English v. Colorado Dep't of Corrections,* 248 F.3d 1002, 1008 (10th Cir. 2001) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). Defendant's evidence suggests that it decided not to renew plaintiff's coaching contract based on the events that occurred at the KU Relays as well as numerous performance-related problems involving plaintiff during her two-year tenure at Olathe South. Defendant has satisfied its "exceedingly light" burden to provide nondiscriminatory reasons for its actions. *See Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1279 (10th Cir.1999).

Plaintiff, then, may resist summary judgment only by presenting evidence that defendant's reasons are pre-

textual (*i.e.*, unworthy of belief) or by otherwise introducing evidence of a discriminatory motive. *See Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002) (citing *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1137 (10th Cir.2000)). Pretext "can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997)). When assessing whether plaintiff has made an appropriate showing of pretext, the court considers the evidence as a whole. *Id.* (citation omitted). As explained below, the court concludes that plaintiff has satisfied her burden.

The "letter" that Dr. Poss and Mr. Kersey sent to Dr. Ghosey concerning the renewal of plaintiff's contract states, in its entirety, as follows:

Sir;

Olathe South is recommending that Leeann Reed not return for future coaching assignments.

Concerns;

-Students' safety and health

-Failure to follow District and KSHSAA policy

-Inability to work with others

Your truly,

Robert Kersey

OSHS Ath. Dir.

Gwen Poss

OSHS Principal

In their answers to plaintiff's interrogatories, defendant identifies fourteen (14) specific performance-related issues that formed the basis for the decision not to renew plaintiff's contract. Eleven of these incidents took place before April 2002 and include such conduct as leaving athletic uniforms in the hallway; training student athletes in inclement weather and in "very hot" weather; a complaint regarding "facility usage;" a complaint regarding "student transportation in violation of District policy;" recruitment of student athletes; a complaint regarding "student safety concerns riding [sic] in parking lot on trunk of car;" and running with student athletes during "dead" week.

Significantly, plaintiff's evidence suggests that some of these incidents were not even brought to her attention at the time they occurred or at the time complaints were made. Moreover, plaintiff asserts that those that were brought to her attention were not presented as problems in any way until after this litigation had either started or became imminent as plaintiff had secured the services of an attorney. Moreover, Mr. Kersey testified that, prior to April 2002, he had no reason to recommend the nonrenewal of plaintiff's contract. Thus, a reasonable jury could infer that eleven of the fourteen incidents identified by defendant as reasons for the nonrenewal of plaintiff's contract were not, in fact, reasons for defendant's decision and were simply contrived after-the-fact to support a decision already made.

Of the three remaining reasons asserted by defendant for its decision, one of those reasons is similarly suspect. In that regard, defendant notes in its interrogatory response that it received a letter from Dr. Poss on April 22, 2002 requesting that plaintiff not be permitted to substitute teach at Olathe South in the future as a result of a complaint concerning deficiencies in her teaching performance on April 10, 2002. Plaintiff's evidence suggests that defendant went "fishing" for this particular complaint in an effort to bolster its decision not to renew plaintiff's contract. Spe-

cifically, plaintiff's evidence shows that Mr. Kersey, despite the fact that he had no responsibilities with regard to substitute teaching, contacted Dr. Ghosey on the morning of April 22, 2002 to inquire as to plaintiff's status as a substitute teacher at Olathe South. Dr. Ghosey responded that there were currently no "blocks" against plaintiff at Olathe South and that any such requests would have to be in writing. Later that day, Dr. Poss sent a written request to Dr. Ghosey asking that plaintiff be "blocked" as a substitute teacher at Olathe South based on an incident that occurred nearly two weeks earlier. The timing of Dr. Poss' letter, then, suggests that Dr. Poss was simply trying to find another reason to support the decision (or at least Dr. Poss and Mr. Kersey's recommendation) not to renew plaintiff's contract.

The only remaining reasons set forth by defendant for its decision is plaintiff's conduct at the KU Relays in April 2002 and the Olathe North principal's subsequent request that plaintiff not be permitted to substitute teach at Olathe North until the matter involving Ms. Dyke (and Ms. Dyke's stalking allegation) was resolved. With respect to these reasons, plaintiff asserts, in essence, that the KU Relays incident was blown out of proportion. While that may be true, plaintiff's belief that defendant overreacted to the situation does not show that defendant did not honestly believe that plaintiff's conduct warranted the nonrenewal of her contract. Defendant, however, does not suggest that any particular issue in and of itself motivated its decision or that any particular issue was more significant than other issues. Rather, defendant suggests that the "totality of the circumstances" (*i.e.*, plain-

tiff's performance problems taken as a whole) resulted in the decision not to renew plaintiff's contract. Thus, the court concludes that plaintiff's failure to discredit two reasons out of fourteen proffered reasons set forth by defendant is not fatal to her claim. *See, e.g., Wolf v. Buss (America) Inc.,* 77 F.3d 914, 920 (7th Cir. 1996) (a plaintiff may still withstand summary judgment even if he or she fails to cast doubt upon all of an employer's proffered reasons particularly in those cases in which the "multiple grounds" offered by the employer for the adverse action of which the plaintiff complains are so intertwined, or the pretextual character of one of them so fishy and suspicious).

In sum, the court concludes that plaintiff's evidence, taken as a whole, is sufficient to cast some doubt on defendant's proffered reasons for its decision not to renew plaintiff's coaching contract. Summary judgment is, therefore, denied on this claim.

## IV. Retaliation

Plaintiff also claims that defendant retaliated against her for complaining, in her April 26, 2002 letter to Mr. Kersey, that Mr. Kersey was discriminating against plaintiff based on her gender. Specifically, plaintiff alleges that defendant, based on plaintiff's complaint of discrimination, refused to renew her coaching contract for the next school year and that Mr. Kersey, based on plaintiff's complaint of discrimination, refused to recommend plaintiff to any potential employers.[7] Plaintiff's retaliation claims are based on 42 U.S.C. § 2000e–3(a), which states:

---

7. Plaintiff suggests in the pretrial order that Mr. Kersey imposed the work restrictions on her because she complained of discrimination and defendant moves for summary judgment on this claim as well. Plaintiff, however, does not address this specific retaliation claim in her response to defendant's motion and, thus, it appears that she has abandoned this claim.

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

The court considers these retaliation claims under the *McDonnell Douglas* burden-shifting framework. *See Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205, 1212 (10th Cir.2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under that framework, plaintiff must first establish a prima facie case by showing that she engaged in protected opposition to discrimination; she suffered an adverse employment action; and there is a causal connection between the protected activity and the adverse employment action. *See id.* (citation omitted). Once plaintiff makes a prima facie showing, defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See id.* Plaintiff must then respond by demonstrating that defendant's asserted reasons for the adverse action are pretextual. *See id.*

In support of its motion for summary judgment, defendant contends that Mr. Kersey's statement that he would not, if asked, recommend plaintiff for employment with potential employers does not constitute an "adverse employment action" (an argument that the court, as explained above in connection with plaintiff's prima facie case of gender discrimination, has already rejected and thus need not consider here) and, in any event, plaintiff cannot establish a causal connection between her complaint of discrimination and Mr. Kersey's statement or defendant's decision not to renew her coaching contract for the next school year. Finally, defendant asserts that, with respect to both claims, defendant has advanced legitimate nondiscriminatory reasons for its actions and plaintiff cannot show that such reasons are pretextual. As set forth in more detail below, the court concludes that plaintiff has come forward with sufficient evidence to survive summary judgment on both of her retaliation claims.

## A. Mr. Kersey's Refusal to Recommend Plaintiff to Potential Employers

■ Defendant asserts that plaintiff cannot establish a prima facie case of retaliation with respect to her claim that Mr. Kersey refused to provide her a recommendation because Mr. Kersey made the statement concerning the recommendation four days before plaintiff even complained about discrimination. According to defendant, then, plaintiff cannot establish a causal connection between her complaint of discrimination and Mr. Kersey's refusal to provide a recommendation. Indeed, it is beyond dispute that, to establish a causal connection between her protected activity and Mr. Kersey's statement, plaintiff must show that Mr. Kersey, at the time he made his statement, had knowledge of plaintiff's discrimination complaint. *See Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188–89 (10th Cir.2002) (citing *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993)). Of course, when Mr. Kersey first told plaintiff on April 22, 2002 that he would not recommend her, she had not yet complained of discrimination. Plaintiff's evidence, however, indicates that on April 22, 2002, Mr. Kersey simply warned her that if she failed to take responsibility for her conduct at the KU Relays and instead blamed Coach Quinn, Coach Calder or the Olathe School District for the discipline that she received as a result of what happened at the KU Relays, then he would

not recommend her. On April 22, 2002, then, Mr. Kersey's statement concerning providing a recommendation was qualified in the sense that he might still provide her with a recommendation if she acknowledged that what she did was wrong and did not blame others for her situation. Plaintiff testified, however, that on April 26, 2002, after reviewing her letter in which she complained of discrimination, Mr. Kersey told her in no uncertain terms that he "would not give [her] a letter of recommendation because [she] had accused him of discriminating against [her]." Plaintiff's evidence, then, demonstrates that Mr. Kersey's knowledge of plaintiff's complaint at least had some bearing on his willingness to provide her with a recommendation. Plaintiff, then, has come forward with sufficient evidence to establish a causal connection between her complaint and Mr. Kersey's refusal to provide her with a recommendation.

 Defendant next asserts that plaintiff cannot show that Mr. Kersey's legitimate, nondiscriminatory reasons for refusing to provide plaintiff with a recommendation are pretextual. The court disagrees. As explained above, plaintiff testified that Mr. Kersey, after reading the letter containing her complaint, stated that he would not recommend her because she had accused him of discrimination. While Mr. Kersey denies making this statement (he testified that he told plaintiff on April 26, 2002 that he would not recommend her because she refused to acknowledge that she was wrong to coach another team's student athlete), and defendant urges that plaintiff's testimony is "unsubstantiated," the court must give the benefit of the doubt to plaintiff at this stage in the proceeding. Viewing the evidence in the light most favorable to plaintiff, Mr. Kersey in fact relied on plaintiff's complaint of discrimination in deciding

that he would not provide her with a recommendation. Under Tenth Circuit precedent, such evidence constitutes direct evidence of discrimination and renders any analysis of pretext unnecessary. *See Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir.1990) (a plaintiff proves discrimination by direct evidence when she presents proof, inter alia, that the employer actually relied on a protected characteristic in making its employment decision). In short, plaintiff has provided sufficient evidence to create a triable issue as to whether her complaint of discrimination motivated Mr. Kersey's decision regarding a recommendation and, thus, defendant's motion for summary judgment with respect to this claim is denied. *See McGarry v. Board of County Comm'rs of County of Pitkin*, 175 F.3d 1193, 1200 & n. 4 (10th Cir.1999) (district court erred in granting summary judgment to defendant where plaintiff came forward with direct evidence of discrimination).

*B. Defendant's Decision Not to Renew Plaintiff's Coaching Contract*

 Plaintiff also claims that defendant, based on plaintiff's discrimination complaint, decided not to offer plaintiff a coaching contract for the next school year. According to defendant, summary judgment is appropriate on this claim because plaintiff cannot establish a causal connection between her complaint and defendant's decision. Specifically, defendant contends that plaintiff admits that Mr. Kersey advised her on April 22, 2002–four days before she complained of discrimination-that she would not be returning to coach at Olathe South the next year. Thus, while defendant admits that the final decision concerning the renewal of plaintiff's coaching contract was not made by Dr. Ghosey until May 25, 2002, defendant asserts that Dr. Ghosey's decision was ir-

relevant in that plaintiff knew as of April 22, 2002 that she would not have her contract renewed.

The problem with defendant's argument is that defendant's evidence demonstrates quite clearly that no decision with respect to the renewal of plaintiff's contract was made until approximately May 25, 2002–after plaintiff's complaint of discrimination. In its responses to plaintiff's interrogatories, for example, defendant asserts that the decision was not made until late May 2002 and that Dr. Ghosey made the decision.[8] Defendant has no evidence (and does not contend) that Mr. Kersey had the authority to decide whether plaintiff's contract would be renewed-regardless of what he may have said to plaintiff on that day. The implication, then, is that Mr. Kersey's statement to plaintiff that she would not be back the next year was nothing more than an expression of Mr. Kersey's own belief of what the ultimate decision might be with respect to her coaching future at Olathe South. Moreover, while plaintiff may have believed that she would not be returning, and may have even believed that Mr. Kersey had the authority to make that decision and had made that decision as of April 22, the fact remains (according to defendant's own evidence) that no decision was made until late May. Thus, defendant's argument that there is no causal connection is rejected and the question becomes whether plaintiff has any evidence to support her claim that the decision that was made in May 2002 was based, even in part, on her complaint of discrimination.

The record reflects that Dr. Poss and Mr. Kersey wrote a letter to Dr. Ghosey on May 22, 2002 in which they recommended that plaintiff not return to Olathe South for future coaching assignments. In their letter, Dr. Poss and Mr. Kersey set forth concerns about plaintiff's job performance including jeopardizing students' safety and health and failing to follow District and KSHSAA policy and also set forth concerns about plaintiff's inability to work with others. It is uncontroverted that Dr. Ghosey decided not to renew plaintiff's coaching contract based in part on the recommendation of Dr. Poss and Mr. Kersey. The record is unclear, however, concerning the extent to which Dr. Ghosey was influenced by Mr. Kersey's recommendation and the record is unclear concerning the amount of input Dr. Poss actually had in the letter to Dr. Ghosey. In other words, it may be that the letter to Dr. Ghosey, while bearing the names of both Dr. Poss and Mr. Kersey, was based primarily on Mr. Kersey's belief that plaintiff's contract should not be renewed and it may be that Dr. Ghosey's decision was based primarily on the recommendation of Mr. Kersey.

If a jury were to find that Mr. Kersey influenced Dr. Ghosey's decision, then the jury could similarly find that the decision was based, at least in part, on plaintiff's complaint of discrimination.[9] Plaintiff testified that Mr. Kersey became angry when he read plaintiff's letter accusing him of discrimination and that he said to her, "How dare you think that." She further testified that he told her he would not

---

8. Dr. Ghosey learned about plaintiff's complaint of discrimination on or about May 10, 2002.

9. Even though Mr. Kersey told plaintiff on April 22, 2002 that she would not be returning to coach at Olathe South, plaintiff's subsequent complaint of discrimination could have solidified Mr. Kersey's desire not to have plaintiff return the next year as evidenced by plaintiff's testimony that Mr. Kersey was angered by her complaint. Thus, plaintiff's complaint of discrimination could have played some part in Mr. Kersey's recommendation to Dr. Ghosey.

recommend her for other employment because she had accused him of discrimination. Viewing the evidence in the light most favorable to plaintiff, a jury could certainly conclude, if they believed plaintiff's evidence, that Mr. Kersey's letter to Dr. Ghosey of May 22, 2002 in which he recommends that plaintiff's contract not be renewed was based, at least in part, on plaintiff's complaint of discrimination.[10] If Mr. Kersey's recommendation to Dr. Ghosey was based, even in part, on plaintiff's complaint, then depending on the extent to which Dr. Ghosey was influenced by Mr. Kersey's recommendation (as opposed to conducting his own independent analysis of the circumstances), then plaintiff can establish that the decision not to renew her contract was motivated in part by her complaint of discrimination. *Cf. Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d 1220, 1231–32 (10th Cir.2000) (where manager was not "simply a rubber stamp or conduit for an employment decision made in reality by underlings" but conducted his own investigation into events, he was not responsible for an underling's allegedly discriminatory actions); *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.1998) (in retaliation context, causal link can be severed if there is evidence that the ultimate decisionmaker did not merely "rubber stamp" the recommendation of the employee with knowledge of the protected activity, but conducted an independent investigation into the circumstances surrounding the employee's termination); *Shager v. Upjohn Co.,* 913 F.2d 398, 405 (7th Cir.1990) (if committee discharged plaintiff for reasons untainted by supervisor's animus against older workers, link between animus and discharge is severed). For the foregoing reasons, summary judgment on this claim is denied.

## V. Compensatory Damages

 Finally, defendant moves for summary judgment on plaintiff's claim for compensatory damages.[11] According to defendant, compensatory damages are only available in cases where the plaintiff alleges intentional discrimination and plaintiff has failed to allege in the pretrial order that defendant engaged in intentional discrimination. Defendant contends, then, that plaintiff's claim for compensatory damages is barred. The court agrees with plaintiff that this argument lacks merit. Plaintiff has clearly stated in the pretrial order that her claim is based on Title VII. To prevail on any Title VII claim for disparate treatment, a plaintiff must prove intentional discrimination. *See EEOC v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1191 (10th Cir.2000). Indeed, the only Title VII claims that do not require a showing of intentional discrimination are those that are based on a theory of disparate impact, *see Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1312 (10th Cir.1999), which plaintiff's case clearly is not. Thus, as the claims asserted by plaintiff in the pretrial order by their very nature require a showing of intentional discrimination, plaintiff's failure to allege specifically that defendant's discrimination was intentional is of no conse-

---

**10.** This is particularly true because Mr. Kersey's letter to Dr. Ghosey was written less than one month after plaintiff complained of discrimination. *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) (holding that a one and one-half month period between protected activity and adverse action may, by itself, establish causation) (citing *Ra-*

*mirez v. Oklahoma Dept. of Mental Health,* 41 F.3d 584, 596 (10th Cir.1994)).

**11.** Defendant also moves for summary judgment on plaintiff's claim for back pay and lost wages in light of plaintiff's subsequent earnings. In response, plaintiff has expressly abandoned this claim.

quence. Defendant's motion on this issue is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 43) is granted in part and denied in part.

**IT IS SO ORDERED.**